JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation, | Civil Case No. 8:24-cv-01895-JVS-DFM |
| Plaintiff, | **CONSENT DECREE [24]** |
| vs. | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |
| SHAPCO, INC., a California corporation; CUSTOM PIPE AND FABRICATION INC., a California corporation; and STANTON PARTNERSHIP, | |
| Defendants. | |

Consent Decree

Civil Case No. 8:24-cv-01895-JVS-DFM

## <u>CONSENT DECREE</u>

The following consent decree ("Consent Decree") is entered into by and between Orange County Coastkeeper ("Coastkeeper"), Shapco Inc., incorrectly named in the Complaint as Shapco, Inc. ("Shapco"), Custom Pipe & Fabrication Inc., incorrectly named in the Complaint as Custom Pipe and Fabrication Inc. ("Custom Pipe"), and Stanton Partnership ("Stanton") (hereinafter, "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively are the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a nonprofit public benefit corporation;

**WHEREAS**, Coastkeeper is dedicated to the protection of swimmable, drinkable, fishable water, and the promotion of watershed resilience throughout Orange County, including the Anaheim Bay/Huntington Harbour watershed;

**WHEREAS,** Custom Pipe is the current operator of the facility located at 10560 Fern Avenue, Stanton, CA 90680 (the "Facility");

**WHEREAS,** Shapco is the parent company to Custom Pipe and Fabrication Inc. and is therefore also considered an operator and/or owner of the Facility;

**WHEREAS,** Stanton is the owner of the real property underlying the Facility, and has a lease agreement with Custom Pipe that gives Stanton knowledge and control over the acts and omissions giving rise to the violations alleged in the complaint;

**WHEREAS**, Coastkeeper alleges that Defendants' operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as subsequently amended by Order No. 2018-0028-DWQ (effective July 1, 2020) (collectively, as

amended, and as may be subsequently amended from time to time, the "General Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA");

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs or other control measures as necessary to comply with any and all applicable receiving water limitations, including the Santa Ana Basin Plan, and/or other requirements set forth in the Permit, including compliance with the Criteria for Priority Toxic Pollutants in the State of California ("CTR"), 40 C.F.R. § 131.38, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on June 28, 2024, Coastkeeper issued a notice letter (the "Notice Letter") to Defendants, their registered agents, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resource Control Board (the "State Water Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board (the "Regional Water Board"), the Regional Administrator of EPA Regional IX, and the U.S. Attorney General alleging violations of the General Permit and Clean Water Act at the Facility;

**WHEREAS**, on August 30, 2024, Coastkeeper filed a Complaint against Defendants (the "Complaint") in the United States District Court for the Central District of California (Civil Case No. 8:24-cv-01895-JVS-DFM) (hereinafter, the "Action");

**WHEREAS**, Coastkeeper alleges that Defendants are violating the substantive and

procedural requirements of the General Permit and Clean Water Act;

WHEREAS, Defendants deny each of Coastkeeper's claims in the Notice Letter and the Complaint;

WHEREAS, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

WHEREAS, Defendants agree to comply with the current version of the General Permit;

WHEREAS, capitalized terms used but not defined herein shall have the meanings ascribed to them in the General Permit; and

WHEREAS, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the U.S. District Court for the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.    The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1).

4.    Coastkeeper has standing to bring the Clean Water Act claims raised in the Notice Letter and Complaint.

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the Term of the Consent Decree, or as long thereafter

as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    AGENCY REVIEW AND TERM OF CONSENT DECREE

6.    Coastkeeper shall submit this Consent Decree to the United States Department of Justice and EPA (collectively, the "Federal Agencies") within three business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five calendar days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified mail return receipts or other tracking information, copies of which shall be provided to Defendants upon request, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"), copies of which shall be provided to Defendant if requested.

7.    Following expiration of the Agency Review Period, Coastkeeper shall submit the Consent Decree to the Court for entry.

8.    The term "Effective Date" as used in this Consent Decree shall be the date of entry of this Consent Decree by the Court.   The Settling Parties agree to request immediate entry of this Consent Decree by the Court and if, after fourteen days following that request, the Court has not entered the Consent Decree, the Settling Parties agree that any party to this agreement may request a hearing before the Court to seek entry of the Consent Decree.

9.    This Consent Decree shall terminate three years after the completion of installation of the BMPs defined in Paragraph 11 below, unless (i) an Action Plan (as hereinafter defined in Paragraph 17 below) is required per Paragraph 16 below, in which case the Consent Decree will terminate one year after complete implementation of the measures described in the Action Plan and/or (ii) if there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen days' notice by Coastkeeper that the dispute has been fully resolved (the occurrence of any of the above hereinafter being the

"Termination Date," as applicable). The length of time between the Effective Date and the Termination Date shall be the "Term."

## II.    COMMITMENTS OF THE SETTLING PARTIES

### A. Storm Water Pollution Control Best Management Practices

10.     In addition to maintaining the current BMPs at the Facility, Defendants shall develop and implement the BMPs identified herein, as well as any other BMPs reasonably necessary to comply with the provisions of this Consent Decree and the General Permit. Specifically, Defendants shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with BAT and BCT and/or when necessary to support attainment of water quality standards ("WQS").

11.     Defendants shall develop and fully implement the following BMPs at the Facility:

11.1. Area Draining to Clarifier and Sampling Point One (SP-1).

   11.1.1.     Within six months from the Effective Date, Custom Pipe shall: Install an advanced treatment system that will function automatically without operator attention at the onset of runoff. The system can either employ polymer-assisted filtration without using the existing clarifier or automatically inject flocculant into the clarifier as needed.

11.2. Area Draining to Sampling Point Two (SP-2).

   11.2.1.     Within six months from the Effective Date, Custom Pipe shall submit a work plan to Coastkeeper to either:

   (a)     Permanently eliminate the flow of industrial storm water from the area draining to SP-2; or,

   (b)     Permanently divert storm water from the north and west sides of the north building to the clarifier, as shown in Exhibit A, the Facility

site map (*e.g.*, with a berm; a collection channel; or a trench drain, collection sump, and pump).

11.2.2.    Coastkeeper shall have thirty days to review and comment on the workplan. Custom Pipe shall accept any comments or explain in writing why Coastkeeper's comments are not incorporated into the work plan within thirty days from receipt of Coastkeeper's comments. Coastkeeper shall then have ten days to accept Custom Pipe's work plan or invoke dispute resolution pursuant to Section IV of this Consent Decree.

By: _____
Jerry A. Witkow

11.2.3.    Custom Pipe shall apply for any applicable permits within thirty days of Coastkeeper's acceptance of the work plan.

11.2.4.    Custom Pipe shall implement the work plan within ninety days of permit approval, if permits are required, or within ninety days of Coastkeeper's acceptance of the work plan if no permits are required.

11.3. Housekeeping.

11.3.1.    Custom Pipe shall utilize a ride-on industrial vacuum sweeper with dual side brooms, including a HEPA filter to sweep at least three times each week, with special attention to picking up forklift dust;

(a)    Custom Pipe shall utilize air blowing to address dust in areas inaccessible with the ride-on sweeper, and shall ensure such dust is then either swept or vacuumed up;

(b)    Custom Pipe shall keep a log of its sweeping activities and provide it to Coastkeeper pursuant to Paragraph 24 of this Consent Decree;

11.3.2.    Custom Pipe shall:

(a)    Remove the forklift from the northwest corner of the Facility;

(b)    Ensure that all physical changes to raw material, including threading, cutting, and grooving, are covered by October 1, 2025;

Consent Decree

6

Civil Case No. 8:24-cv-01895-JVS-DFM

(c)  Close and cover all bins and dumpsters prior to Forecasted Rain Events[1]; and

(d)  Refrain from conducting industrial operations in the parking area as designated in Exhibit A.

12.  <u>Confirmation of Completion</u>. Custom Pipe shall provide Coastkeeper with written documentation, including photographs, demonstrating that the required BMPs have been implemented in compliance with Paragraph 11 above within thirty days of completion in each case.

**B. <u>Storm Water Sampling</u>**

13.  <u>Sampling</u>. Storm water monitoring procedures shall be implemented at the Facility to ensure that samples are collected in compliance with Permit requirements. Defendants shall maintain their business operations pursuant to the General Permit. The following additional procedures also shall be implemented at the Facility:

13.1. <u>Frequency</u>. During the Term of this Consent Decree and thereafter in compliance with the General Permit, Custom Pipe shall collect samples from at least four Qualifying Storm Events ("QSEs"), as defined in the General Permit per Reporting Year[2] from the analytical monitoring locations described in the Facility SWPPP provided that at least four QSEs occur during the applicable reporting year. Custom Pipe shall sample at least two QSEs during each half of the Reporting Year. If Defendants are unable to collect samples from at least two QSEs during the first half of the reporting year, Defendants shall make every effort to collect all four samples in the second half of the reporting year.

13.2. <u>Documentation</u>. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and

---

[1] "Forecasted Rain Event" means a rain event with a probability of forty percent or greater to cumulatively result in 0.10 inches of rain within the next twenty-four hours as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov) for "90680, Stanton, CA, USA."
[2] Reporting Year is defined as between July 1 – June 30.

discharge location when samples are collected (the "Sampling Photographs"). Custom Pipe shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches. Custom Pipe shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Coastkeeper as described in Paragraph 24.

13.3. <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 herein.

13.4.    <u>Lab</u>. Except for pH samples, a laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the General Permit, analysis of pH shall be completed onsite using a calibrated instrument for pH in accordance with the manufacturer's instructions.

13.5.    <u>Detection Limits</u>. Custom Pipe shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the General Permit, whichever is lower.

13.6.    <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136.

13.7.    <u>Results</u>. Custom Pipe shall request that sample-analysis results and associated chain of custody forms be reported to them within thirty business days of laboratory receipt of the sample.

13.8.    <u>Reporting</u>. No later than thirty days from receipt of the complete laboratory report, Custom Pipe shall (i) submit sampling results to the State Board's Stormwater Multiple Application and Report Tracking System website ("SMARTS") and (ii) provide notice to Coastkeeper that the lab results have been uploaded to SMARTS and are available for review (or if the

results cannot be reviewed on SMARTS, provide a copy of the lab results to Coastkeeper). Custom Pipe shall submit the Sampling Photographs to Coastkeeper within seven days of Coastkeeper's written request.

**C. Visual Observations**

14.    During the Term of this Consent Decree, Custom Pipe shall conduct visual observations pursuant to Sections XI.A and IV.B.4 of the General Permit. Custom Pipe shall maintain observation records to document compliance with these Sections and shall provide Coastkeeper with copies of such records as described in Paragraph 24.

**D. Employee Training**

15.    Within thirty days of the Effective Date, Custom Pipe shall develop and implement an employee training program that meets the following requirements and ensures: (1) there are a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree (hereinafter referenced as "Designated Employees" or "DE"); and (2) such Designated Employees are trained to perform the required activities to maintain compliance with the General Permit, the Facility's SWPPP, and this Consent Decree ; and (3) all full-time regular (non-temporary) non-clerical Custom Pipe employees at the Facility (hereinafter referenced as "ALL Employees") receive basic information regarding storm water BMPs (the "Training Program"). At a minimum, the Training Program shall include the following:

15.1.    Non-Storm Water Discharges. Designated Employees shall be trained on the General Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

15.2.    The SWPPP and BMPs. Custom Pipe shall train all Designated Employees on the SWPPP and, specifically, BMP implementation

and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. Designated Employees shall be trained on proper operational procedures and control measures. All training of Designated Employees must include the requirements of the General Permit and this Consent Decree including the additional BMPs outlined in Paragraph 11 above.

15.3.  Visual Observation. Custom Pipe shall designate and train an adequate number of Designated Employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring, as required by this Consent Decree. Such training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

15.4.  Storm Water Sampling. Custom Pipe shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree and the General Permit. The Training Program shall include training of Designated Employees sufficient to ensure: (i) proper sampling protocols, including chain of custody requirements, are followed at all times and, (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

15.5.  Training Implementation. Training of at least two Designated Employees (hereinafter referenced as "Designated Trainers") shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the

requirements of this Consent Decree and the General Permit. The Designated Trainers and/or the QISP shall provide the training set forth in this Paragraph 15.

15.6.    Language. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to: (i) staff comprehension of the Training Program and/or, (ii) compliance with this Consent Decree and the General Permit, Custom Pipe shall provide translation services at all training sessions and translation of all training materials.

15.7.    Training Program Frequency – DE Employees. The Training Program shall be repeated annually or more frequently as necessary to ensure all Designated Employees are familiar with the requirements of this Consent Decree and the General Permit. Designated Employees should, in any event, receive training prior to assuming responsibilities under the General Permit or this Consent Decree.

15.8.    Training Program Frequency – ALL Employees.   ALL Employees who have not received training shall receive initial training  to ensure they receive enough information regarding storm water housekeeping and best practices to comply with this Consent Decree and the General Permit. ALL Employees who are new shall receive this training within six months of hiring. Any future training of ALL Employees must be documented.

15.9.    Training Records. Custom Pipe shall maintain training records to document compliance with this section and shall provide Coastkeeper with a copy of such records as described in Paragraph 26.

### E. **Reduction of Pollutants in Discharges**

16.    Storm Water Contaminant Reduction. Defendants shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values"). Failure to achieve Table 1 Values shall not be deemed a violation of the Permit or this Consent Decree so long as Custom Pipe continues to make timely and diligent efforts as required by the Permit and this Consent Decree to further reduce the level of pollutants in the discharges. Starting in the 2025-2026 Reporting Year, any two exceedances of the same parameter of any Table 1 Value at the Discharge Location in an annual Reporting Year shall trigger the Action Plan requirements set forth in Paragraph 17 below.

**Table 1. Numeric Values for Storm Water Discharges[1]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Total Suspended Solids | 100 mg/L | Permit NAL |
| Oil and Grease | 15 mg/L | Permit NAL |
| Total Recoverable Aluminum | 0.75 mg/L | Permit NAL |
| Zinc, Total | 0.26 mg/L | Permit NAL |
| Total Recoverable Iron | 1.0 mg/L | Permit NAL |
| Nitrate + Nitrite (as Nitrogen) | 0.68 mg/L | Permit NAL |
| Copper, Total[3] | 0.0332 | Permit NAL |

Coastkeeper agrees if any Table 1 parameter is not detected from the discharge location in four consecutive QSEs, then that parameter will be removed from Table 1 in this Consent Decree for the remainder of its Term for that specific discharge location.[4]

17.    Action Plan. In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to Paragraph 16 above, Custom Pipe shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the

---

[3] If, in the first reporting year following the Effective Date of this Consent Decree, Custom Pipe does not detect an exceedance of the copper NAL in its sampling, Custom Pipe shall not be required to sample for copper in subsequent years following the first reporting year. If, in the first reporting year following the Effective Date of this Consent Decree, Custom Pipe's samples detect copper in exceedance of the Permit NAL, Custom Pipe shall not be bound by the requirements of this Consent Decree for copper.

[4] Not detected shall be identified as either non-detect ("ND") or a value less than the laboratory detection limit.

parameter in question during the next Reporting Year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 following the sample results that triggered the Action Plan. No more than one Action Plan will be required in any given year.

17.1.    <u>Requirements</u>. Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 following the submittal of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties.

17.2.    <u>Action Plan Review</u>. Coastkeeper shall have thirty days upon receipt of Custom Pipe's Action Plan to provide Custom Pipe with comments. Within thirty days of receiving Coastkeeper's comments on an Action Plan, Custom Pipe shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or Custom Pipe's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

18.    Custom Pipe shall revise the Facility's SWPPP within thirty days of

completion of the Action Plan to reflect the changes required by the Action Plan. Custom Pipe shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in Paragraph 22 below.

19.    <u>Action Plan Payments</u>. If Custom Pipe is required to submit an Action Plan to Coastkeeper in accordance with Paragraphs 16 and 17 above, Custom Pipe shall make a one-time payment of $10,000 Dollars per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, c/o Legal Department, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

**F. Storm Water Pollution Prevention Plan ("SWPPP")**

20.    <u>SWPPP</u>. Within thirty days of the Effective Date, Custom Pipe shall amend the Facility's SWPPP to incorporate the requirements of this Consent Decree.

21.    <u>Revising the SWPPP</u>. Custom Pipe shall revise the Facility's SWPPP if there are any significant changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at the Facility, within thirty days of the occurrence of any of the above-listed events.

22.    <u>Commenting on Revised SWPPPs</u>. Custom Pipe shall upload each revised SWPPP to SMARTS and provide notice to Coastkeeper within thirty days of its completion. Coastkeeper shall provide comments, if any, to Custom Pipe within thirty days of receipt of the SWPPP. Within thirty days of receiving Coastkeeper's comments on the SWPPP, Custom Pipe shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Custom Pipe's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

### G. Compliance Monitoring and Reporting

23.    <u>Site Inspections</u>. Up to three Coastkeeper representatives may conduct one annual site inspection at the Facility during each Reporting Year during the Term of this Consent Decree. In the event of a dispute between the Settling Parties regarding Custom Pipe's compliance with this Consent Decree, and provided a site inspection would be relevant to resolving such dispute, the Parties agree to meet and confer regarding one additional site inspection at Coastkeeper's request. Coastkeeper shall not unreasonably request, and Custom Pipe shall not unreasonably deny, the additional site inspection, and all remaining disputes regarding an additional site inspection shall be resolved through timely initiation of the dispute resolution procedures in Section IV below.

23.1.    The site inspections shall occur Monday through Friday, excluding Federal and religious holidays, during normal business hours. Coastkeeper shall provide Custom Pipe with no less than two business days' notice before any site inspection. Notice will be provided via electronic mail to the notice recipient(s) designated in Paragraph 43 below. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours if the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. As used throughout this Paragraph 23.1, "normal business hours" shall mean and refer to the Facility operating hours as identified in the Facility's SWPPP. For any site inspection requested to occur during dry weather, either party shall have the option to reschedule within a reasonable time-period, not to exceed 14 days from the requested date. The Parties agree to meet in good faith to accommodate the needs and schedules of both Parties

1    and their representatives.   As part of their site inspections,

2    Coastkeeper representatives shall wear appropriate personal

3    protective equipment while on site and participate in any required

4    safety trainings. The Coastkeeper representative shall collect samples

5    using the same process as Custom Pipe employees.

6    23.2.    During the site inspections, Coastkeeper shall be allowed access to the

7    Facility's SWPPP, storm water and monthly visual observation

8    records, storm water employee training records, and other storm water

9    monitoring records, reports, Sampling Photographs (as defined

10    above), and storm water sampling data for the Facility.

11    23.3.    During the site inspections, Coastkeeper may inspect and, with the

12    permission of Custom Pipe and subject to reasonable accommodation

13    of all applicable site safety and operational restrictions, collect

14    samples of storm water discharges from the Facility in accordance

15    with the procedures set forth in the General Permit, with

16    representative photographs as necessary upon the condition that the

17    Parties execute a suitable confidentiality agreement governing such

18    photographs. A certified California laboratory shall analyze samples

19    collected by Coastkeeper and copies of the lab reports shall be

20    provided to Custom Pipe upon request.

21    23.4.    Coastkeeper shall be permitted to take photographs or video recording

22    during any site inspection. The Parties acknowledge that during any

23    site inspection Coastkeeper's representatives might observe or obtain

24    business confidential and/or trade secret information, and as such, the

25    Parties agree that all information obtained by Coastkeeper from

26    Defendants as a result of or in connection with a site inspection shall

27    be maintained as confidential and shall not be disclosed to any third

party, except that such information can be presented to the Court to the extent necessary (and redacted to the extent feasible to protect confidential information) to enforce compliance with this Consent Decree. Site inspections will be limited to a visit of the areas exterior to the buildings on site, and will not include access to the interior of the buildings at the facility or observation into the buildings from the exterior. Defendants reserve the right to limit or further define physical site access as needed to accommodate site conditions, or safety or operational concerns, but will make good faith efforts to accommodate the requirements of this Paragraph when feasible and safe.

**H. Reporting and Document Provision**

24.     During the Term of this Consent Decree, any documents described herein shall be provided to Coastkeeper within fourteen days of Coastkeeper's written request.

25.     During the Term of this Consent Decree, Custom Pipe shall notify Coastkeeper whenever Defendants have filed or received any compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the facility on SMARTS, or submit any such data or documents to or from the Regional Board, the State Board, and/or any state or local agency, county or municipality. Such notifications shall be provided to Coastkeeper within ten days of filing or receiving on SMARTS or with the agencies, counties, and/or municipalities. In the event that Coastkeeper is unable to obtain legible copies of said documents from SMARTS, Defendants shall, within ten days of receiving notice from Coastkeeper of its inability to obtain said documents from SMARTS, email copies of such documents to Coastkeeper at the relevant notice address contained herein.

26.     Any documents, written communications, and/or correspondence related to Custom Pipe's compliance with the General Permit received by Custom Pipe from any

1  Federal, State, or local agency, county or municipality shall be provided to Coastkeeper

2  within fourteen days of receipt by Custom Pipe.

3  **III.    ENVIRONMENTAL MITIGATION PROJECT, LITIGATION FEES AND**

4  **COSTS, AND STIPULATED PENALTIES AND INTEREST**

5         27.    <u>Compliance Monitoring and Oversight</u>. Custom Pipe agrees to partially

6  defray costs associated with Coastkeeper's monitoring of Custom Pipe's compliance with

7  this Consent Decree in the amount of forty thousand dollars ($40,000) for an anticipated

8  term of three years from the Effective Date. Further, such payment shall be made within

9  thirty days of the Effective Date. Custom Pipe agrees, that if the Consent Decree is still

10  in effect after three years from the Effective Date, it shall make an additional annual

11  payment of $10,000 dollars to defray continued costs associated with Coastkeeper's

12  monitoring of Custom Pipe's compliance with this Consent Decree. Such payment shall

13  be made on the anniversary of the Effective Date. Payment shall be delivered via certified

14  mail or overnight delivery to: Orange County Coastkeeper, c/o Legal Department, 3151

15  Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

16         28.    <u>Environmentally Beneficial Project</u>. To remediate the environmental harms

17  alleged to have resulted from the allegations in the Notice Letter and Complaint, Custom

18  Pipe agrees to make a payment of thirty-seven thousand dollars ($37,000) to Rose

19  Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Custom Pipe shall make such

20  a payment within thirty days of the Effective Date. Custom Pipe shall provide

21  Coastkeeper with a copy of such payment and copy Coastkeeper and its attorneys on any

22  related correspondence.

23         29.    <u>Coastkeeper's Fees and Costs</u>. Custom Pipe shall pay a total of one-hundred

24  and fifty-eight thousand dollars ($158,000) in full satisfaction of Coastkeeper's claimed

25  costs of monitoring Defendants' compliance with this Consent Decree, along with

26  investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees,

27  overhead and other costs incurred as a result of investigating and filing the lawsuit, and

28

negotiating a resolution of this matter within thirty days of the Effective Date. The payment shall be made payable to Orange County Coastkeeper, c/o Legal Department, and either wired or delivered via certified mail or overnight delivery to: 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

30.     Stipulated Payment. For any missed deadline, Coastkeeper shall promptly notify Custom Pipe in writing of the missed deadline and provide Custom Pipe no fewer than five business days to cure. Custom Pipe shall make a stipulated remediation payment of $750 per week for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties or cured upon notice by Coastkeeper. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Custom Pipe's discharges and shall be made to Rose Foundation identified above and delivered via check or wire transfer. Custom Pipe agrees to make the stipulated payment within thirty days of the missed deadline. Custom Pipe shall CC Coastkeeper on any email sent to the aforementioned organization confirming payment of the stipulated payment.

## IV.     **DISPUTE RESOLUTION**

31.     Court Enforcement Authority. This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing the terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

32.     Meet and Confer. The Settling Parties shall at all times work informally in good faith to address any issues that might arise concerning Custom Pipe's compliance with the General Permit and the Clean Water Act occurring or arising after the Effective Date of the Consent Decree. However, a Settling Party shall be able to invoke the dispute resolution procedures of this Section IV by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling

Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen calendar days from the date of the notice in an attempt to fully resolve the dispute within thirty days. The Settling Parties may, but are not required to, extend these time periods in an effort to resolve the dispute without court intervention.

33.    <u>Mediation</u>. If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations described in Paragraph 32 above, Defendants may invoke formal mediation by sending Coastkeeper a registered letter to that effect no more than five business days after the 30-day period described in Paragraph 32. The Parties shall mutually agree on a mediator and a mediation process within fifteen business days of the date of Defendants' notice to Coastkeeper.  The non-prevailing Party shall be responsible for the costs of mediation.

34.    <u>Formal Resolution</u>. If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above within thirty days of the meet and confer described in Paragraph 32, (or by the end of the mediation process described in Paragraph 33 above, if mediation is invoked), or if Defendants fail to send Coastkeeper a registered letter invoking formal mediation and the Parties do not provide an extension to that deadline or agree to other alternative dispute resolution processes, the Settling Party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

35.    <u>Fees and Costs</u>. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, the prevailing or substantially prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth  in Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d), applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    __MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE__

36.    <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Defendants and each of their current and former officers, directors, managers, members, employees, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives, and waives all claims which were or could have been asserted in Coastkeeper's Notice Letter and Complaint up to and including the Termination Date of this Consent Decree.

37.    <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, hereby release Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives), and waives all claims   related to the 60-Day Notice and/or the Complaint, up to and including the Termination Date of this Consent Decree, which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree, except for fees, costs, expenses or any other sum incurred or claimed pursuant to Paragraph 29 of this Consent Decree.

## VI.   __MISCELLANEOUS PROVISIONS__

38.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation on disputed claims. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant

1   to this Consent Decree shall constitute or be construed as a finding, adjudication,

2   admission, or acknowledgment of any fact, law, or liability, nor as an admission of

3   violation of any law, rule, or regulation. Defendants maintain and reserve all defenses

4   they may have to any alleged violations that may be raised in the future.

5       39.   <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the

6   performance of any of its respective obligations under this Consent Decree when

7   performance becomes impossible due to an event of Force Majeure. Force Majeure is any

8   event arising from: war; fire; earthquake; windstorm; flood or natural catastrophe; civil

9   disturbance; vandalism; pandemic or public h~~ea; lth threat; sabotage or terrorism~~; restraint
    By: Jerry A. Witkow

10  by court order or public authority or agency; or action or non-action by, or inability to

11  obtain the necessary authorizations or approvals from, any governmental agency. A Force

12  Majeure shall not include normal inclement weather, economic hardship, inability to pay,

13  or employee negligence. Any Settling Party seeking to rely upon this paragraph to excuse

14  or postpone performance shall have the burden of establishing that it could not reasonably

15  have been expected to avoid the Force Majeure event and that despite exercise of due

16  diligence has been unable to overcome the failure of performance. The Settling Parties

17  shall exercise due diligence to resolve and remove any Force Majeure event.

18      40.   <u>Construction</u>. The language in all parts of this Consent Decree shall be

19  construed according to its plain and ordinary meaning, except as to those terms defined

20  in the General Permit, the Clean Water Act, or specifically herein. The captions and

21  paragraph headings used in this Consent Decree are for reference only and shall not affect

22  the construction of this Consent Decree.

23      41.   <u>Choice of Law</u>. The laws of the United States shall govern this Consent

24  Decree.

25      42.   <u>Severability</u>. If any provision, paragraph, section, or sentence of this Consent

26  Decree is held by a court to be unenforceable, the validity of the enforceable provisions

27  shall not be adversely affected.

28

43. <u>Correspondence</u>. All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

<u>If to Coastkeeper:</u>

Orange County Coastkeeper
Attn: Legal Department, Erin Barlow
Email: erin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

<u>If to Custom Pipe, Shapco, and/or Stanton Partnership</u>:

Jerry A. Witkow
1666 20th Street, Suite 100
Santa Monica, CA 90404
310-264-1671 (voice/e-fax)
Email: jwitkow@shapcoinc.com

<u>With a copy to:</u>

Pillsbury Winthrop Shaw Pittman LLP
Michael S. McDonough
725 S Figueroa St Ste 2800, Los Angeles, CA 90017
Email: michael.mcdonough@pillsburylaw.com
Phone: 213-488-7555

Any change of address or addresses shall be communicated in the manner described above for giving notices. Notifications of communications shall be deemed submitted immediately after receipt via email or the next business day after having been deposited with U.S. mail or courier service.

44. <u>Effect of Consent Decree</u>. Nothing in this Consent Decree shall be construed to affect or limit in any way Defendants' obligation to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

Compliance with this Consent Decree shall not be deemed to constitute compliance with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

45.    Defendants' Assignment or Sale of Property. Subject only to the express conditions contained in this Consent Decree, all the rights, duties, and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Custom Pipe transferee or assign ("Custom Pipe Assignee") will continue industrial operations at the Facility, Custom Pipe shall notify Coastkeeper ten days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten days following the Assignment Notice, Custom Pipe will provide Coastkeeper with a written assignment and assumption duly executed by Custom Pipe and the Custom Pipe Assignee assigning Custom Pipe's obligations under this Consent Decree to the Custom Pipe Assignee. In the event Defendants transfer, sell, or otherwise dispose of the Facility and underlying real property, Defendants shall notify Coastkeeper ten   days in advance of the proposed transfer, sale, or disposition (the "Property Transfer Notice") and within ten days following the Property Transfer Notice, Defendants will provide Coastkeeper with a written assignment duly executed and acknowledged by Defendants and the Facility transferee ("Facility Transferee") assigning Defendants' obligations under this Consent Decree to the Property Transferee.

46.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated unless by a written instrument, signed by the Settling Parties.

48.    Full Settlement. This Consent Decree constitutes a full and final settlement

of this matter.

49.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any one party.

50.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.    <u>Authority</u>. The undersigned representatives for each Settling Party each certify s/he is fully authorized by the Settling Party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

52.    <u>Validity</u>. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

[Remainder of this page intentionally left blank]

1    **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as

2    of the date first set forth below.

3    APPROVED AS TO CONTENT

4

5    Dated: June 23 _____, 2025          By: _____

6                                            Garry Brown

7                                            Founder & President
                                             Orange County Coastkeeper
8    Dated: June 30, _____, 2025           By: _____

9                                            Jerry A. Witkow

10   APPROVED AS TO FORM                      Authorized Representative for Custom Pipe
                                             Fabrication Inc., Shapco, Inc., and
                                             Stanton Partnership
11
                                             ORANGE COUNTY COASTKEEPER
12

13   Dated: _____ June 20 ____, 2025        By: _____

14                                           Erin A. Barlow

15                                           Attorney for Orange County Coastkeeper

16

17   Dated: ____ June 23 ____, 2025         By: _____

18                                           Michael S. McDonough

19                                           Attorney for Custom Pipe and Fabrication
                                             Inc., Shapco, Inc., and Stanton Partnership
20

21   **IT IS SO ORDERED.**                  UNITED STATES DISTRICT COURT
                                             CENTRAL DISTRICT OF CALIFORNIA
22

23

24   Dated: _____ August 19 , 2025

25                                           Honorable Judge James V. Selna

26

27

28   [Proposed] Consent Decree              Civil Case No. 8:24-cv-01895-JVS-DFM

                          26

# Exhibit A



**Custom Pipe & Fabrication, Inc. - Proposed Drainage Diagram**
**10560 Fern Avenue, Stanton, CA 90680**